# RESOLUTION No. 54

## UNITED STATES et al. v. EXXON CORPORATION
## CRIMINAL ACTION No. 91-131-01 (DNJ)

Whereas, on March 20, 1991 the United States of America, the States of New York and New Jersey ("the Trustees") and Exxon Corporation entered into a Memorandum of Agreement (the "Criminal MOA") to satisfy the terms of the Plea Agreement and Judgment resolving criminal charges against Exxon Corporation concerning the Exxon Bayway Oil Spill that occurred on or about January 1-2, 1990; and

Whereas, Paragraphs 7(c) and 8 of the Criminal MOA establish the "Arthur Kill Trust Fund" in the Registry of the Court, United States District Court for the District of New Jersey, to be funded by the Exxon Corporation, for use by the trustees to plan, implement, and oversee action to restore, replace or acquire the equivalent of natural resources that have been injured, destroyed, lost or impacted by the Exxon Bayway Oil Spill that occurred on or about January 1-2, 1990; and

Whereas, the trustee have determined that disbursements of funds from the Arthur Kill Trust Fund shall be made in accordance with the procedures established in the separate Memorandum of Agreement (the "Civil MOA") entered into on March 19, 1991, by the United States of America, acting by and through the National Oceanic and Atmospheric Administration (NOAA), the United States Department of the Interior (001), the State of New York, the City of New York, New York, the State of New Jersey, and the City of Elizabeth, New Jersey (collectively referred to as "the Governments") to administer those sums recovered from the Exxon Bayway oil spill to restore, rehabilitate, and acquire the equivalent of injured natural resources in the Arthur Kill and other portions of the Greater New York/New Jersey Harbor; and

Whereas, Paragraph III.A. of the Civil MOA, in order to provide for proper, efficient, and timely disposition of the recovered funds, establishes a Governments Committee, the membership of which consists of a representative of each of the Governments; and

Whereas, Paragraph III.B. of the Civil MOA provides that the voting members of the Governments Committee with respect to actions proposed to be undertaken with funds allocated for expenditures in the State of New Jersey, shall be NOAA and 001 (the Federal Trustees) and the State of New Jersey; and

Whereas, the natural resource objectives of the Civil MOA, specifically as found in Paragraph II.B., include restoration of, rehabilitation of, and improvement of access to degraded natural resources in the NY/NJ Harbor and related ecosystems including the Arthur Kill; and

Whereas, the Governments Committee has identified the Lincoln Park West Wetland Restoration Project site in Jersey City, New Jersey as a viable and dynamic restoration project site and determined that allocating Exxon Bayway settlement funds to the Lincoln Park West Wetland

Restoration Project will achieve the goal of restoring a significant area of coastal wetlands in the Arthur Kill ecosystem; and

Whereas, the proposed Lincoln Park West Wetland Restoration Project is located in a highly urbanized area of the Hackensack Meadowlands within the Arthur Kill ecosystem. Furthermore, the Lincoln Park West Wetland Restoration Project site is a part of the Lincoln Park Complex, an approximately 270-acre parcel owned by the Hudson County Department of Parks and Recreation (HCDPR). The HCDPR has owned the Lincoln Park Complex since 1905 and has dedicated the property to permanent open space and recreational usage; and

Whereas, until 2006 the New Jersey Department of Environmental Protection (NJDEP) and the U.S. Army Corps of Engineers, New York District (ACOE) lead efforts to develop a plan to restore the Lincoln Park West Wetland Restoration Project area, in consultation with the National Oceanic and Atmospheric Administration (NOAA); and

Whereas, since 2006 the NJ DEP and NOAA have lead the efforts to plan and design the proposed Lincoln Park West Wetland Restoration Project. Under the proposed restoration plan, approximately 24.4 acres of wetland habitat including low marsh, high marsh, open water and mud flat, and scrub shrub habitats will be restored and/or enhanced; and

Whereas, the proposed Lincoln Park West Wetland Restoration Project is a part of a larger proposed plan to restore and improve approximately 90 acres of the property in the Lincoln Park Complex via activities including: a landfill closure; wetland habitat restoration and recreational improvements (golf course and trails); and the beneficial reuse of harbor navigation materials (clean sand); and

Whereas, it is estimated that it will cost $ 13.6 million dollars to complete the Lincoln Park West Wetland Restoration Project; and

Whereas, the NJDEP and ACOE have provided and will continue to contribute substantial resources, including expertise, materials, and funds, to the development of the Lincoln Park West Wetland Restoration Project. Specifically, the NJDEP and the ACOE have provided $1.2 million in past costs towards the feasibility study and preparation of the Draft Ecosystem Restoration Report and Environmental Assessment; and

Whereas, HCDPR, NJDEP, ACOE, and the Port Authority of New York and New Jersey are partnering to have clean sand material from an ACOE navigational dredging project available for use at the Lincoln Park West Wetland Restoration Project; and

Whereas, NJDEP applied for, and was selected by NOAA as a recipient of, American Recovery and Reinvestment Act (ARRA) funds as the non-federal sponsor of the Lincoln Park West Wetland Restoration Project. NOAA selected the Lincoln Park West Wetland Restoration Project site to receive $10.6 million of the $167 million in federal ARRA funds Congress has authorized the agency to administer for wetland restoration; and

Whereas, the Government's Committee recognizes the multiple benefits of partnering with the other federal and state entities listed above to complete the Lincoln Park West Wetland Restoration Project. Economies of scale will be realized by joining Exxon Bayway settlement funds to the other funding and in-kind contributions listed above. Sharing and coordinating project planning, oversight, mobilization, and construction tasks and costs will avoid duplication of effort and maximize the use of each entities knowledge, expertise, and resources to accomplish the Lincoln Park West Wetland Restoration Project in a cost effective and timely manner:

Now, therefore, pursuant to Paragraph 9 of the Criminal MOA and Paragraphs III.B and III.D.4.A of the Civil MOA, the Federal Trustees, the State of New Jersey, and the State of New York resolve to transfer the sum of $963,000 from the USA v. Exxon, Arthur Kill Criminal Court Registry Account administered by the U.S. District Court for the District of New Jersey to the NJDEP. The NJDEP will administer the funds to complete the Lincoln Park West Wetland Restoration Project on behalf of the Governments Committee.

Resolution No. 54

UNITED STATES et al v. EXXON CORPORATION

Governments Committee

FOR THE STATE OF NEW JERSEY

_____ 9/9/09

Date

Assistant Commissioner for
Natural and Historic Resources
New Jersey Department of
Environmental Protection
CN 404
Trenton, NJ 08625

Resolution No. 54

UNITED STATES et al v. EXXON CORPORATION

Governments Committee

FOR THE SECRETARY OF THE UNITED
STATES DEPARTMENT OFCOMMERCE

8/11/09

Date

John G. Catena, NOAA
National Marine Fisheries Service
Restoration Center
55 Great Republic Drive
Gloucester, MA 01930

Resolution No. 54

UNITED STATES et al v. EXXON CORPORATION

Governments Committee

FOR THE AUTHORIZED OFFICIAL
DEPARTMENT OF THE INTERIOR

Aug 20, 2009

Date

Timothy Kubiak
Assistant Supervisor
Environmental Contaminants
USFWS
NJ Field Office
927 North Main Street, Building D
Pleasantville, NJ 08232

RG 7986

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA,                :
STATE OF NEW YORK and THOMAS C.
JORLING, New York State Commis-
sioner of Environmental Conser-          :
vation, as New York Trustee of
Natural Resources, STATE OF NEW
JERSEY and SCOTT WEINER, New             :
Jersey Commissioner of the
Department of Environmental              :
Protection, as New Jersey Trustee
of Natural Resources, and THE            :
CITY OF NEW YORK,
                                         :
              Plaintiffs,
                                         :
        -against-
                                         :
EXXON CORPORATION,
                                         :
              Defendant.
                                         :
-----------------------------------X

CV - 91 - 1003

91 CV    KORMAN, J.

CONSENT ORDER

TABLE OF CONTENTS

SECTION                                                PAGE

I.     Jurisdiction                                      9
II.    Definitions                                       9
III.   Parties Bound                                     9
IV.    Payment                                          10
V.     Reopening the IRPL                               14
VI.    Marine Operations Training                       16
VII.   Data Disclosure                                  17
VIII.  Public Comment                                   18
IX.    Effectiveness of Consent Order                   18
X.     Release of Claims                                18
XI.    Dismissals of Actions With Prejudice             20
XII.   Disclaimer of Liability                          20
XIII.  Reservation of Rights                            20
XIV.   Retention of Jurisdiction by the Court           22
XV.    Delivery of Notices/Studies/Documents            22
XVI.   Compliance with Laws and Regulations             24
XVII.  Representatives                                   24
XVIII. Counterparts                                     25
XIX.   Headings                                         25

- 2 -

WHEREAS, the parties to this Consent Order agree that settlement of the claims in this case against Exxon is in the public interest and that entry of this Consent Order is the most appropriate means to resolve the matters covered herein;

WHEREAS, Exxon Corporation ("Exxon"), through a division, Exxon Company, U.S.A., is the owner and operator of an Inter-Refinery Pipeline ("IRPL") for the transfer of petroleum and petroleum products between the Exxon Bayway Refinery ("Bayway"), located in Linden, New Jersey and the Exxon Bayonne Plant and Terminal ("Bayonne Plant"), located in Bayonne, New Jersey, which pipeline runs in part beneath the Arthur Kill, a body of water separating the State of New Jersey from the State of New York;

WHEREAS, a spill of No. 2 fuel oil ("Spill") occurred from the IRPL on or about January 1-2, 1990;

WHEREAS, No. 2 fuel oil from the Spill entered into the waters of the State of New Jersey and the State of New York and reached the shorelines of both states and property owned by the United States, the States of New York and New Jersey, the City of Elizabeth and the City of New York;

WHEREAS, the United States of America and the Department of Commerce through the National Oceanic and Atmospheric Administration ("NOAA"), and the Department of the Interior, the State of New Jersey and Scott Weiner, Commissioner of the Department of Environmental Protection (hereinafter referred to jointly as the "State of New Jersey"), the State of New York and Thomas C. Jorling, Commissioner of the New York State Department

of Environmental Conservation (hereinafter referred to jointly as
the "State of New York") are trustees for, and the City of New
York and the City of Elizabeth are owners of, certain natural
resources damaged by the Spill;

WHEREAS, the United States of America on behalf of the
Department of Commerce through the National Oceanic and
Atmospheric Administration, and the Department of the Interior
and the Environmental Protection Agency (hereinafter referred to
jointly as the "United States") and the State of New York, the
City of New York and the State of New Jersey filed a complaint on
March 20, 1991, alleging that, by reason of the Spill, Exxon is
responsible for the Spill and liable for all cleanup, removal and
monitoring costs incurred, all costs of studying both the short-
term and long-term effects upon the natural resources, and
damages to the natural resources owned, controlled, managed by,
held in trust by, appertaining to, or otherwise controlled by
the Governments, and all penalties and fines pursuant to the
Federal Water Pollution Control Act, the New York Navigation Law,
the New York Environmental Conservation Law, the common law of
nuisance, and other provisions of statutory and common law;

WHEREAS, the State of New Jersey has instituted a lawsuit
entitled State of New Jersey, Department of Environmental
Protection v. Exxon Corporation, a Corporation of the State of
New Jersey, also d/b/a Exxon Company, U.S.A., Superior Court of
New Jersey, Law Division, Union County, Docket No. UNN-L-0387-90,
alleging that Exxon is responsible for the Spill and seeking all

- 4 -

cleanup, removal and monitoring costs incurred, all costs of studying both the short and long term effects to the natural resources and environment of the State of New Jersey and all environmental damage costs, including, but not limited to, restoring and/or replacing the State's damaged natural resources and all damages suffered by the citizens of New Jersey for loss of use of these resources;

WHEREAS, the City of Elizabeth has also instituted a lawsuit entitled City of Elizabeth, a Municipal Corporation of the State of New Jersey v. Exxon Corporation, a Corporation of the State of New Jersey, d/b/a Exxon Company, U.S.A., Superior Court of New Jersey, Law Division, Union County, Docket No. UNN-L-0560-90, alleging that Exxon is responsible for the Spill and seeking judgment for damages, indemnification for costs of future economic and environmental treatment and surveillance and keeping open claims which may arise by virtue of future economic and environmental conditions resulting from the Spill, which suit has been consolidated into the action entitled State of New Jersey, Department of Environmental Protection v. Exxon Corporation, a Corporation of the State of New Jersey, also d/b/a Exxon Company, U.S.A. and City of Elizabeth, a Municipal Corporation of the State of New Jersey v. Exxon Corporation, a Corporation of the State of New Jersey, also d/b/a Exxon Company, U.S.A., Superior Court of New Jersey, Law Division, Union County, Docket No. UNN-L-0387-90;

- 5 -

WHEREAS, pursuant to the Order of Judge Edward W. Beglin, Jr., Superior Court of New Jersey, dated October 10, 1990, a mediator, Eric R. Max, has been appointed to facilitate a settlement of the consolidated action;

WHEREAS, the City of New York has instituted an action in the Supreme Court of the State of New York, Richmond County, entitled The City of New York and Carlos M. Rivera, as Fire Commissioner of the City of New York v. Exxon Corporation, Index No. 0398/90, alleging that Exxon is responsible pursuant to the New York State Navigation Law, the New York City Hazardous Substance Emergency Response Law, the New York City Fire Code and common law theories of fraud, nuisance, negligence and trespass for the Spill and injury caused by it and is seeking cleanup, removal, and monitoring costs, economic, consequential, property and punitive damages, penalties and injunctive relief arising out of the Spill;

WHEREAS, pursuant to the Order dated September 18, 1990 of Justice Louis Sangiorgio, Supreme Court, Richmond County, the same mediator has been appointed to facilitate a settlement of the aforesaid litigation commenced by the City of New York;

WHEREAS, the United States of America, acting through the Department of Justice, the Office of the United States Attorney for the Eastern District of New York, NOAA, the Department of the Interior, and the Environmental Protection Agency, and the State of New York, acting through the office of the State Attorney General and the New York State Department of Environmental

- 6 -

Conservation ("NYSDEC"), have attended and participated in mediation sessions conducted pursuant to the mediation orders;

WHEREAS, it is understood that prior to any reopening of the IRPL, Exxon shall obtain from the City of New York a revocable consent to maintain and use certain tunnels and pipelines in Staten Island, identified in a revocable consent given on or about July 19, 1973 to Exxon Corporation;

WHEREAS, Exxon participated in the Bi-State Oil Industry Working Group and, as a member of the audit subcomittee, among others, has agreed that internal audits as reviewed by outside auditors of individual facilities' petroleum transfer operations, including Bayway's, may occur and the facility specific report which results therefrom should be made available to the Governments through NJDEP and NYSDEC.

WHEREAS, Exxon certifies that on March 2, 1990, Exxon voluntarily suspended its tanker and barge operations at Bayway and the Bayonne Plant pending a comprehensive evaluation of marine operations at those facilities; on March 3, 1990, a team drawn from Exxon's worldwide technical resources, supplemented by outside consultants, began a Marine Operations Study (the "MOS") to develop recommendations which, when implemented, would promote the interests of safety and environmental protection; the scope of the MOS included all marine and related terminaling operations from the beginning of inbound maneuvering of tankers and barges to the conclusion of outbound maneuvering; and based on the MOS recommendations, Exxon has voluntarily undertaken the specific

- 7 -

action steps, among others, which are identified in Exhibit A hereto, an update of which will be furnished to the Governments one year after entry of the Consent Order; and normal marine operations resumed at Bayway and the Bayonne Plant on June 11, 1990;

WHEREAS, Exxon certifies that to date it has incurred total costs of approximately ten million dollars ($10,000,000) in conducting the MOS and implementing its recommendations; and for 1991, Exxon anticipates additional costs in excess of fifteen million dollars ($15,000,000) resulting from implementation of the MOS, including capital expenditures of at least six million dollars ($6,000,000) for continued work on capital projects being undertaken as a result of the MOS recommendations;

WHEREAS, Exxon has complied with the New Jersey Spill Compensation and Control Act directive and paid $661,250.00 to the Governments to conduct a study by the Governments of the effects of the Spill;

WHEREAS, Exxon has undertaken clean-up activities under United States Coast Guard supervision, which activities Exxon certifies cost approximately eighteen million dollars ($18,000,000), and has undertaken and will undertake, through participation with the Governments as set forth in the attached Memorandum of Agreement and this Consent Order, appropriate actions necessary to restore and replace the natural resources which have been damaged as a result of the Spill;

- 8 -

WHEREAS, Exxon intends to enter a plea of guilty to a crime of negligent violation under Section 309(c)(1) of the Federal Water Pollution Control Act, 33 U.S.C. Section 1319(c)(1) in the United States District Court for the District of New Jersey and make payments totalling five million dollars ($5,000,000) as specified in the agreements connected with that action;

NOW THEREFORE, it is hereby ordered, adjudged and decreed, and agreed among the parties:

I.   JURISDICTION

The Court has jurisdiction over the subject matter and over the parties to this action pursuant to 28 U.S.C. Sections 1331, 1332, 1345, 1367 and 33 U.S.C. Sections 1319 and 1321.  This Court also has jurisdiction over the subject matter of the pendent state law claims in this action.  Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) and (c).

II.  DEFINITIONS

A.  "Natural Resources" shall have the meaning provided in Section 101(16) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601(16).

B.  "Governments" shall mean the United States, the State of New York, the City of New York, the State of New Jersey, and the City of Elizabeth.

III. PARTIES BOUND

This Consent Order shall apply to and be binding upon and inure to the benefit of the signatories, their present and former officers, directors, trustees, shareholders, agents,

- 9 -

representatives, employees, subsidiaries and affiliates, as well as their heirs, executors, administrators, successors and assigns. Unless otherwise expressly provided elsewhere herein, upon approval and entry of this Consent Order by the Court, the Consent Order shall become effective and constitute a final judgment between and among the Governments and Exxon.

IV. PAYMENT

A. Upon entry of this Consent Order, Exxon shall be obligated to pay the sum of Ten Million Dollars ($10,000,000) as follows:

1. $1,500,000 on entry of this Consent Order; of which no more than two hundred fifty thousand ($250,000) (the precise amount to be verified by an accounting) is to be paid directly to the City of Elizabeth for its response costs and no more than two hundred thousand ($200,000) (the precise amount to be verified by an accounting), is to be paid directly to the City of New York for its response costs;

2. $3,000,000 on the first anniversary of the lodging of this Consent Order; three hundred thousand dollars ($300,000) of which will be paid directly to the City of Elizabeth for improvements to its waterfront park area;

3. $3,000,000 on the second anniversary of the lodging of this Consent Order;

- 10 -

4.    $833,333 on the third anniversary of the lodging
      of this Consent Order;

5.    $833,333 on the fourth anniversary of the lodging
      of this Consent Order; and

6.    $833,334 on the fifth anniversary of the lodging
      of this Consent Order.

B.   The above payments, except as otherwise specified above,
shall be used by the Governments for (i) the acquisition of fee
title of, or conservation easements on, lands or other property
interests including tidal and intertidal wetlands within the New
York/New Jersey Harbor and related ecosystems including the
Arthur Kill in restoration or replacement of natural resources
that have been damaged as a result of the Spill; (ii) the
restoration (including the establishment, maintenance and
provision of public access) and protection of lands including
tidal and intertidal wetlands acquired with such payments, and
adjacent lands and wetlands, impacted by the Spill, and other
lands including tidal and intertidal wetlands in the New York/New
Jersey Harbor and related ecosystems including the Arthur Kill;
and (iii) performance of studies in the New York/New Jersey
Harbor and related ecosystems including the Arthur Kill.

C.   Funds to Be Paid to Court Registry

1.    Because the Governments' jurisdiction of the
injured natural resources is overlapping and the monies
recovered are jointly held by the Governments, except
as otherwise set forth in Paragraph IV. A, above, no

- 11 -

determination has been made as to the expenditures of monies by any individual government.  Accordingly, payments made by Exxon, except as otherwise provided, shall be deposited in the Registry of the Court, United States District Court for the Eastern District of New York.

2.    Except as otherwise provided herein in Paragraph IV. A and B, each payment required by this Consent Order shall be made to the Clerk, United States District Court for the Eastern District of New York. Each such payment shall include on its face a statement that it is a payment pursuant to the Consent Order in 91 CV ___.  Exxon shall cause copies of each such payment and of any transmittal letter accompanying such payments to be sent to the Governments at the addresses set out in Paragraph XV.

3.    The Registry of the Court shall receive and hold payments in interest-bearing instruments or in an interest bearing account or in such other manner as the Court shall order.  All funds and all interest accrued thereon in the Registry Account shall be held in the name of the "Clerk, United States District Court" for the benefit of the Governments.  Upon application by the Governments, as provided for in the Memorandum of Agreement appended hereto as Exhibit B, monies in the

Registry Account shall be disbursed by further order of this Court.

D.   Interest and Penalties for Late Payments

1.   If any payment required of Exxon by Paragraph IV of this Consent Order is not made by the specified date, Exxon shall be liable to the Governments for interest on the overdue amount from the time payment was due until full payment is made at the higher of (a) the rate established by the United States Department of the Treasury under 31 U.S.C. section 3717 and 4 C.F.R. section 102.13 or (b) the prime rate plus 4 percent.

2.   If any payment is not made by the date specified, Exxon shall also pay to the Registry Account stipulated penalties in the following amounts for each day the payment is late:

| DAY(S) OF DELAY | PENALTY |
| --- | --- |
| 1-5 | $1,500 per day |
| 6-30 | $3,000 per day |
| Beyond 31 days | $5,000 per day |

3.   Interest and penalties under this paragraph shall be in addition to any other remedies or sanctions that may be available to the Governments on account of Exxon's failure to comply with the terms of this Consent Order.

- 13 -

V.    REOPENING THE IRPL

A.    Should Exxon determine to reopen the IRPL, Exxon shall undertake a study or studies to determine the extent of any work that may be required to reopen the IRPL or to modify procedures or equipment prior to the recommencement of IRPL operations. Within thirty (30) days of completion of any report of such study prepared by or on behalf of Exxon which addresses findings and/or recommendations of said study concerning the IRPL, Exxon shall send a copy of the report by certified mail to each of the Governments at the addresses designated in Paragraph XV hereof.

B.    If Exxon decides to reopen the IRPL, it shall provide written notice by certified mail to the Governments not less than 90 days prior to reopening. Said notice shall state the date Exxon plans to reopen the IRPL and shall specify that portion(s) of the IRPL to be reopened.

C.    Not later than thirty (30) days prior to any reopening of the IRPL, Exxon shall: (1) provide the Governments with a written description of the IRPL and its location, sizes, service (i.e. product carried), flow rates, and pressure (the "Major Operating Characteristics"), including a description of the leak detection system, operating and maintenance procedures, and measures taken to reduce the risk of future external damage to the IRPL; (2) provide the Governments with a copy of any application for operation of the IRPL which has been or will be submitted to the United States Department of Transportation ("DOT"); (3) provide a reasonable opportunity for a tour of the

- 14 -

IRPL facilities for a total of not more than 25 representatives from the Governments during which operation of the IRPL and leak detection equipment and procedures will be explained; and (4) send to each of the Governments a notice designating the position, location and telephone number of an employee of Exxon to be available to respond to inquiries from the Governments concerning the IRPL. Exxon shall timely notify the Governments of any change in the position, location or telephone number of said designated employee.

D. Exxon will inform the Governments in writing of any significant change in the Major Operating Characteristics within thirty (30) days of the institution of such change.

E. It is understood that any reopening of the IRPL shall be subject to such regulation by DOT as may be provided for by the Hazardous Liquid Pipeline Safety Act of 1979, 49 U.S.C. App. §§ 2001-2014, or regulations promulgated pursuant thereto. However, neither this Consent Order nor any proceeding taken hereunder shall be construed as or deemed to be evidence or an admission or concession by Exxon of any jurisdiction of any of the Governments over the IRPL or of any authority of any of the Governments to restrict, regulate or authorize use of the IRPL, which is expressly denied by Exxon. None of the provisions of this Consent Order, nor evidence of any negotiations or proceedings in furtherance of the compromise and settlement herein, shall be offered or received in any action or proceeding as an admission or concession that any of the Governments has or

- 15 -

lacks any jurisdiction over, or any authority to restrict, regulate or authorize use of, the IRPL.

F.   Until such time as DOT issues an order governing the operation of the IRPL, Exxon agrees that, prior to the reopening of the IRPL, it will (1) develop a new written IRPL operation and maintenance manual, which will include procedures for monitoring pressure during start-up, transfer and shutdown, and for responding to potential leaks during any part of the IRPL operation; (2) develop a formal training program for all IRPL operators and linewalkers consistent with the foregoing operation and maintenance manual; (3) to ensure reliable leak detection of the IRPL, repair or replace the existing leak detection system; (4) develop measures to reduce the risk of future external damage to the IRPL; (5) pressure test the IRPL consistent with any applicable regulation and governmental requirements.  Upon the issuance of a DOT order, these requirements will be superseded by the terms of such order.

VI.  <u>MARINE OPERATIONS TRAINING</u>

A.   Exxon shall, within one year of the entry of the Consent Order, at its sole expense, provide one-day training sessions concerning its marine operations, including without limitation, lightering and dockside transfer operations, communication system use and marine operation spill prevention, to four groups consisting of twenty-five (25) persons each, to be designated by the Governments.  The training shall be at times and places mutually agreed to by Exxon and the Governments.

B.   Exxon shall provide one, one-day training session annually for five years, to a group of twenty-five (25) persons to be jointly designated by the Governments in the care and handling of waterfowl and other birds exposed to petroleum spills.

VII.  DATA DISCLOSURE

Exxon and the appropriate agencies of the Governments shall exchange scientific data as set forth in Exhibit C with respect to the Spill, to promote scientific study of the environment, subject to any agreement between a party and its consultant regarding the consultant's right of initial publication.  The data disclosed shall be made available as soon as practicable. Such data, at the discretion of the producing party, shall not include any material which would disclose opinion work product or communications between the client and counsel or advice of counsel.  No data made available by any Government or by Exxon pursuant to this paragraph shall be admissible in evidence against the party making available that data, or otherwise used against the party making available that data, in any lawsuit or other proceeding; however, any Government or Exxon shall not be precluded from using the same data for any purpose if it is obtained through other means, including but not limited to discovery or court order.  The data disclosed by Exxon and the Governments pursuant to this paragraph is subject to claims of attorney work product and other privileges.  Disclosure of data pursuant to this paragraph by Exxon or the Governments shall not

- 17 -

be deemed a waiver of attorney work product or any other privilege.  The Governments and Exxon agree not to assert or otherwise allege in any litigation or proceeding that the Governments or Exxon waived the work product or any other privilege as a result of the disclosure of data pursuant to this paragraph.

VIII.  <u>PUBLIC COMMENT</u>

There will be a thirty (30) day public comment period consistent with the procedures set forth in 28 C.F.R. section 50.7, prior to moving the Court to enter this Consent Order.

IX.  <u>EFFECTIVENESS OF CONSENT ORDER</u>

If this Consent Order does not become effective for any reason, this Consent Order shall be null and void for all purposes and of no further force and effect, and any and all sums paid by Exxon hereunder shall be refunded to Exxon forthwith together with all interest thereon.

X.  <u>RELEASE OF CLAIMS</u>

A.   Effective upon entry of this Consent Order, each of the Governments releases Exxon, its present and former officers, directors, trustees, shareholders, agents, representatives, employees, subsidiaries and affiliates, as well as the heirs, executors, administrators, successors and assigns of any of them, from any and all claims by the Governments, whether legal, equitable or statutory, including without limitation any and all claims under the Federal Water Pollution Act, 33 U.S.C. §§1251 et seq.; the New York Navigation Law; the New York City Fire Code,

- 18 -

N.Y.C. Admin. Code; the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.; and the Municipal Code of the City of Elizabeth; and all implementing regulations, and under common law, that arise out of or are based on, or could in the future arise out of or be based on:  (i) any of the matters alleged in the Complaints served or filed in this action and each of the state court actions described above; (ii) any matter, except verified outstanding obligations to the Coast Guard to pay for equipment, personnel, and materiel, relating to the Spill; and (iii) any matter relating to the operation of the IRPL, in connection with the Spill, including its leak detection system. As more particularly set forth in Paragraph V.E, this Release of Claims does not limit or waive any right the Governments may have to seek to enjoin operation of the IRPL nor is this Release of Claims a concession by Exxon that the Governments have any jurisdiction over or any right to enjoin the operation of the IRPL.

B.   Notwithstanding any other provision of this Consent Order, the release of claims shall not apply to failure by Exxon to satisfy the requirements of this Consent Order.

C.   Effective upon entry of this Consent Order, Exxon releases each of the Governments, their agencies, employees and agents from any and all claims by Exxon whether legal, equitable or statutory, including without limitation any and all claims under common law, that arise out of or are based on, or could in

the future arise out of or be based on any matter relating to the Spill.

## XI. DISMISSAL OF ACTIONS WITH PREJUDICE

Upon entry of this Consent Order, each of the claims for relief in this action is, and each of the causes of action in each of the state court actions described shall be dismissed with prejudice and without costs or disbursements to any party. The Signatories agree that they will enter into and execute all Stipulations of Dismissal, with prejudice, necessary to implement the resolution of all controversies between them arising out of the Spill.

## XII. DISCLAIMER OF LIABILITY

A.    Neither entry of this Consent Order nor any action in accordance with this Consent Order shall constitute an admission of liability under any federal, state or local statute, regulation, ordinance, or common law for any fines, penalties, response costs, damages or claims or an admission of any issue of fact or law or of responsibility for the Spill by Exxon, its present or former officers, directors, trustees, shareholders, agents, representatives, employees, subsidiaries or affiliates.

B.    The parties further agree that none of the provisions of this Consent Order, nor evidence of any negotiations or proceedings in pursuance thereof, shall be offered or received in evidence in this action or any other action or proceeding by any party for any purpose, except for enforcement of this Consent Order.

- 20 -

## XIII.  RESERVATION OF RIGHTS

Notwithstanding any other provisions of this Consent Order:

A.   This Consent Order is not intended to in any way affect the interpretation or enforcement of, or modify or supersede any existing or future license or consent Exxon may now have or in the future obtain to install or operate the IRPL on lands owned or held in trust for the people by the Governments.

B.   The Governments reserve all rights they may have to regulate the IRPL and Exxon's oil transfer operations.  This Consent Order shall in no way limit those rights and in no way limits any rights the Governments may have to require or impose conditions upon Exxon's installation or operation of the IRPL on lands owned or held in trust for the people by the Governments.

C.   This Consent Order does not constitute a settlement or waiver of any right acquired by subrogation or implied indemnification by any oil spill compensation fund which entitles any such fund to bring an action for reimbursement of claims arising from the Spill which such fund has acquired.  Exxon may assert all defenses and remedies available to it, including failure by the Governments to comply with requirements of the applicable statutes and regulations in any forum.  The Governments represent that, to their knowledge, after diligent inquiry, no claims arising out of or related to the Spill have been made by any person upon any oil spill compensation fund as of the date of the execution of this Consent Order.

- 21 -

D.    Nothing in this Consent Order shall constitute or be construed as a release by Exxon of any claim or cause of action against any person or other entity not a signatory to this Consent Order for any liability it may have arising out of or relating to the Spill.

XIV.  RETENTION OF JURISDICTION BY THE COURT

The Court shall retain jurisdiction of this matter for the purpose of entering such further orders, direction, or relief as may be appropriate, including any construction of the terms, or implementation or enforcement of this Consent Order.

XV.   DELIVERY OF NOTICES/STUDIES/DOCUMENTS

All notices, studies, reports, or other documents required to be delivered to representatives of the Governments or Exxon shall be sent by certified mail, return receipt requested, to the individuals at the addresses set forth below:

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

    Charles Hoffmann, Assistant Branch Chief
    Water, Grants & General Law  Branch
    Office of Regional Counsel
    U.S. Environmental Protection Agency, Region II
    26 Federal Plaza
    New York, New York  10007

FOR THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION:

    Marguerite Matera
    Office of General Counsel
    Northeast Region
    National Oceanic and Atmospheric
        Administration
    One Blackburn Drive
    Gloucester, Massachusetts  01930

- 22 -

FOR THE DEPARTMENT OF THE INTERIOR:

      Mark Barash
      Office of Regional Solicitor
      Department of Interior
      Suite 612
      One Gateway Center
      Newton Corner, Mass 02158

FOR THE STATE OF NEW YORK:

      Gordon J. Johnson
      Deputy Bureau Chief
      New York State Dept of Law
      Environmental Protection Bureau
      120 Broadway
      New York, New York 10271

      Carol Ash
      Regional Director, Region II
      New York State Department of
        Environmental Conservation
      47-40 Twenty First Street
      Long Island City, New York 11101

FOR THE STATE OF NEW JERSEY:

      Kenneth W. Elwell
      Deputy Attorney General
      Division of Law
      Hughes Justice Complex
      CN 112
      Trenton, New Jersey 08625

      Wayne Howitz, Chief
      Bureau of Compliance and Technical Services
      Hazardous Waste Enforcement Element
      CN 028
      401 East State Street
      Fifth Floor
      Trenton, N.J 08625-0028

      Paul Hauge
      New Jersey Department of Environmental Protection
      Division of Science and Research
      CN 409
      401 East State Street
      First Floor
      Trenton, N.J. 08625-0409

FOR THE CITY OF NEW YORK:

        Nancy Lewson, General Counsel
        New York City Department of
          Environmental Protection
        One Center Street
        New York, New York  10007

        Marc Matsil, Director
        Natural Resource Group
        Department of Parks and Recreation
        The Arsenal North
        1234 Fifth Avenue
        New York, New York  10029

        Peter H. Lehner, Director
        Environmental Prosecution Unit
        New York City Law Department
        100 Church Street
        New York, New York  10007

FOR THE CITY OF ELIZABETH:

        John N. Surmay, Director
        Health, Welfare & Housing
        City of Elizabeth
        50 Winfield Scott Plaza
        Elizabeth, New Jersey  07201-2462

FOR EXXON CORPORATION:

        Donald D. Esch
        c/o Exxon Company, U.S.A.
        1400 Park Avenue
        Linden, New Jersey  07036

## XVI.  COMPLIANCE WITH LAWS AND REGULATIONS

The Consent Order shall not be construed in any way to relieve Exxon from the obligation to comply with any applicable federal, state, or local law or regulation.

## XVII. REPRESENTATIVES

Each undersigned representative of the parties to this Consent Order certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Order and to execute and legally bind such party to this document.

- 24 -

XVIII. <u>COUNTERPARTS</u>

This Consent Order may be executed in any number of counterparts and each executed counterpart shall have the same force and effect as an original instrument.

XIX. <u>HEADINGS</u>

The headings in this Consent Order are inserted for convenience only and are not intended to be a part of or to affect the meaning or interpretation of the Consent Order.

SO ORDERED THIS _____ day of _____ 1991.

United States District Judge
Eastern District of New York

[First signature page of ten signature pages of Consent Order with Exxon Corporation in United States, et al., v. Exxon Corporation (E.D.N.Y.)]

FOR THE UNITED STATES OF AMERICA

DATE: 3/13/91

Richard B. Stewart
Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice
Washington, D.C.

Richard H. Boote
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
U.S. Department of Justice
Washington, D.C.

Andrew Maloney
United States Attorney
Eastern District of New York

BY:

Robin Greenwald
Assistant U.S. Attorney
Eastern District of New York

- 26 -

[Second signature page of ten signature pages of Consent Order with Exxon Corporation in <u>United States, et al., v. Exxon Corporation</u> (E.D.N.Y.)]

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

DATE: 9/15

Raymond B. Ludwiszewski
Acting Assistant Administrator for
  Enforcement
U.S. Environmental Protection Agency
Washington, D.C.

- 27 -

[Third signature page of ten signature pages of Consent Order
with Exxon Corporation in United States, et al., v. Exxon
Corporation (E.D.N.Y.)]

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

DATE: 3/11/1

Constantine Sidamon-Eristoff
Regional Administrator
U.S. Environmental Protection Agency,
    Region II

- 28 -

[Fifth signature page of ten signature pages of Consent Order
with Exxon Corporation in <u>United States, et al., v. Exxon
Corporation</u> (E.D.N.Y.)]

FOR THE DEPARTMENT OF THE INTERIOR

DATE: 2-5-91

Anthony R. Conte
Regional Solicitor, Northeast Region
Department of the Interior

- 30 -

[Sixth signature page of ten signature pages of Consent Order with Exxon Corporation in <u>United States, et al., v. Exxon Corporation</u> (E.D.N.Y.)]

FOR THE STATE OF NEW YORK

ROBERT ABRAMS
Attorney General

DATE: 3/13/91          BY:

Gordon J. Johnson (GJ7379)
Assistant Attorney General
Environmental Protection Bureau
New York State Department of Law

Nancy Stearns (NS0900)
Assistant Attorney General
Environmental Protection Bureau
New York State Department of Law

Carol Ash
Regional Director, Region II
New York State Department of
Environmental Conservation

- 31 -

[Seventh signature page of ten signature pages of Consent Order with Exxon Corporation in <u>United States, et al., v. Exxon Corporation</u> (E.D.N.Y.)]

FOR THE STATE OF NEW JERSEY

ROBERT J. DEL TUFO
Attorney General of New Jersey
Through
STEVEN J. MADONNA
State Environmental Prosecutor

DATE: **3/18/91**

Kenneth W. Elwell
Deputy Attorney General
  and Assistant State
  Environmental Prosecutor

Donna D'Anna
Deputy Attorney General
  and Assistant State
  Environmental Prosecutor

Martin J. McHugh
Deputy Attorney General
  and Assistant State
  Environmental Prosecutor

- 32 -

[Eighth signature page of ten signature pages of Consent Order with Exxon Corporation in <u>United States, et al., v. Exxon Corporation</u> (E.D.N.Y.)]

FOR, THE CITY OF NEW YORK

DATE: _Nov. 17, 1991_

Victor A. Kovner
Corporation Counsel

Peter H. Lehner
Susan E. Amron
Assistant Corporation Counsels
Environmental Prosecution Unit

— 3 3 —

[Ninth signature page of ten signature pages of Consent Order with Exxon Corporation in <u>United States, et al., v. Exxon Corporation</u> (E.D.N.Y.)]

FOR THE CITY OF ELIZABETH

FRANK P. TROCINO, City Attorney

DATE: 3|19|91          BY: _____

S. Gregory Moscaritolo
Special Counsel

- 34 -

[Tenth signature page of ten signature pages of Consent Order with Exxon Corporation in <u>United States, et al., v. Exxon Corporation</u> (E.D.N.Y.)]

FOR EXXON CORPORATION

DATE:    <u>3/8/91</u>

<u>Joe T. McMillan</u>
Joe T. McMillan
Executive Vice President
Exxon Company, U.S.A.
A Division of Exxon Corporation

EXHIBIT A

12. Reduction of risk of barge overfills by limiting filling height to one foot below the deck (to be discontinued for a barge upon installation of high level alarms and spill rails).

### Bayonne Facilities

1. Improvement of instrumentation to reduce risk of barge overfill (e.g., provision of "loading alert button" for bargeman, and provision of an additional emergency stop button).

2. Improvement of ship to shore communication ability, with installation of new equipment.

3. Improvement of fendering at Pier No. 7.

4. Improvement of sump operation at the active piers, including installation of high level alarms on all non-gravity sumps.

5. Upgrading of hose operations, including replacement of all hoses to meet maximum 5-year life requirement for hose tower, and recommissioning of hose tower.

6. Engineering review and upgrading of hoses, including provisions for interim use of "special" approved asphalt hose, with planned installation of metal loading arms for asphalt service.

7. Testing and repair of equipment to ensure that dock facilities are in good operating order.

8. Pre-booming for vessels transferring all cargo with flash point of greater than 100° F.

9. Structural improvements to marine pier 6.

### Bayonne Procedures

1. Establishment of hands-on dock specific fire training for dock personnel.

2. Enhancement of pre-arrival terminal/ship information exchange, including expansion of existing procedures.

- 3 -

3.   Reinforce use of pier logs to enhance shift change information flow.

4.   Modification of barge topping off procedures.

5.   Institution of additional safeguards, including PSCR coverage and predocking inspection for third-party tankers, and having equipment and personnel on "ready standby" in case of a spill.

6.   Institution of barge pretransfer inspection and hose certification procedures with 3-year maximum hose life requirement for barges and ships.

7.   Institution of additional training for personnel.

8.   Continuing enhancement of procedures for loading of static accumulators.

9.   Implementation of operating guidelines to ensure safer vessel mooring.

10.  Institution of procedure for barge hull insp    on for obvious holes or damage in vessel hulls during the docking operation.

11.  Reduction of risk of barge overfills by limiting filling height to one foot below the deck (to be discontinued upon installation of high level alarms and spill rails on Exxon-owned barges).

12.  Institution of small craft fueling procedures to protect against tank over flows during loading operations.

### Exxon Shipping Co./ Exxon Co. International ("ECI")

1.   Institution of procedures to increase quality of tugs, barges and ships using Exxon facilities.

2.   Upgrading of tugs and barges, including eventual installation of high level alarms and spill rails on all Exxon-owned barges, and the employment in NY/NJ Harbor of the tug "Empire State," on which fire fighting and spill control equipment has been installed.

3.   Improvement of Harbor Pilot Service by screening and approving a select high caliber group.

- 4 -